**BETH JACOB HEBREW TEACHERS COLLEGE, Plaintiff,**

**v.**

**Richard RILEY, in his official capacity as Secretary of the United States Department of Education, Defendant.**

**No. 95 CV 4667.**

United States District Court,
E.D. New York.

Sept. 30, 1999.

Nahal Motamed, George Shebitz, P.C., New York City, for plaintiff.

David L. Goldberg, United States Attorney's Office, Civil Division, Brooklyn, NY, for defendant.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiff Beth Jacob Hebrew Teachers College ("Beth Jacob") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Richard Riley, in his official capacity as Secretary of the United States Department of Education ("DOE"), moves for judgment on the pleadings pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiff's motion is denied, defendant's motion is granted.

## BACKGROUND

Beth Jacob filed this action on November 14, 1995, under the Administrative Procedure Act ("APA") challenging DOE's decision not to reimburse plaintiff under the Pell Grant Program. Plaintiff alleges that DOE's decision is arbitrary and capricious. Specifically, plaintiff alleges that DOE wrongfully withheld approximately $500,000 in federal funds allegedly associated with the administration of a program entitled Religious Teachers for Newly Arrived Immigrants (the "RTNAI Program"). DOE contends that Beth Jacob's RTNAI Program was a non-vocational program and, therefore, plaintiff is not entitled to reimbursement.

Beth Jacob alleges that it is an accredited post-secondary educational institution dedicated to training students to work as teachers at Jewish parochial schools throughout the United States. Prior to 1994, Beth Jacob offered two programs, the Religious Education Program ("REP") and the Jewish Culture Program ("JCP"). It is undisputed that the REP provided vocational training. The purpose of the JCP was the "acculturation of [Russian Jewish] immigrants into Orthodox Jewish communities where they chose to settle." In documents submitted to an independent accrediting agency, Beth Jacob stated that the JCP was "not a vocationally oriented program" and that the "students [did] not aspire to an occupational outcome after concluding [the] program."

On October 18, 1993, Beth Jacob was transferred by the DOE from an "advance" system to a "reimbursement" system of payment due to DOE's concerns that the Beth Jacob did not meet the statutory definition of "higher education." In January 1994, DOE regulators imposed an "emergency action" against Beth Jacob for misusing the Pell Grant Program. Admin. Record at 15. On March 25, 1994, after a hearing, an Administrative Law Judge ("ALJ") found that Beth Jacob, the institution, was properly accredited by a nationally recognized accrediting agency and that the REP was a program that prepares students for gainful employment. However, the ALJ concluded that the JCP was not eligible to receive Pell Grant Funding because it did not prepare students for "gainful employment in a recognized occupation." Admin. Record at 15–16. At some point after the ALJ ruling Beth Jacob stopped offering the JCP. Beth Jacob did not appeal the ALJ's finding.

In August 1994, Beth Jacob submitted an application to the Accrediting Council for Continuing Education and Training ("ACCET") for approval of a program entitled "Religious Teachers for Newly Arrived Immigrants" (the "RTNAI Program"). According to Beth Jacob, the RTNAI program "would train new immigrants to become teachers to subsequent immigrants." Teichman Aff. ¶ 43 Beth Jacob contends that RTNAI is a five year program "encompassing comprehensive language skills, 39 credits of education courses in addition to Judaic studies courses." *Id.* at ¶ 44. The RTNAI commenced on December 4, 1994 with 532 enrolled students. Approximately 116 of those students had previously been enrolled in the JCP.

Beth Jacob received interim approval of the RTNAI Program from ACCET. Teichman Aff.Ex. G. Shortly after receiving interim approval, Rabbi Shlomo Teichman ("Teichman"), President of Beth Jacob, contacted Dr. Jamroz, Acting Director of DOE's Institutional Participation Division, to discuss what further approvals Beth Jacob needed to commence the RTNAI Program. Teichman explained that the program was designed to meet the requirements set forth in the ALJ's decision dated March 25, 1994. According to Teichman, Dr. Jamroz explained that no prior approval was necessary and that Teichman could begin the program immediately. Beth Jacob argues that the conversation constitutes approval of the program and DOE's current allegations that the program does not fit within the requirements of federal law are unfounded. DOE vigorously denies that Dr. Jamroz approved the RTNAI Program.

In late 1994 and early 1995, DOE investigators audited the RTNAI program. Admin. Record at 106–223. The auditors concluded that the RTNAI program was essentially identical to the JCP. The DOE report indicates that the program did not provide vocational training that prepared students for "gainful employment in a recognized occupation," as required by federal law. DOE claims that the auditors discovered that "none of the immigrants in the RTNAI Program took any course in teaching methodology, that students were given elementary-level textbooks, that most students had no intention of seeking employ-

ment, that many students were promised stipends for enrolling in the RTNAI Program, and that may students were elderly, infirm and physically unable to work in any capacity." Def.'s Memo in Opp'n to Summ.J. at 9 *citing* Admin. Record at 106–110, 184–223.

Through personal interviews, auditors concluded that most students "attended classes to learn English, study traditional Jewish religious texts, or for other non-vocational reasons, and several believed that they were involved in a continuation of the discredited JCP." *Id. citing* Admin. Record at 184–223. Beth Jacob denies these allegations through affidavits of former students and steadfastly maintains that the RTNAI program was intended to prepare students for careers as teachers.

Following the audit, ACCET rescinded approval of the RTNAI Program after discovering that Beth Jacob made false statements in support of its accreditation application. Admin. Record at 91–92. DOE alleges that Beth Jacob terminated the RTNAI program before the end of the first semester. Beth Jacob denies that allegation and asserts that the semester was completed, as scheduled, during the first week of February 1995.

At around the time the DOE began its audit of the RTNAI program, Beth Jacob submitted three requests to DOE, on behalf of students, for reimbursement of the cost of attending the RTNAI program. Admin. Record at 19–89. The requests totaled $498,735. In January 1995, DOE asked that Beth Jacob provide copies of course descriptions, bulletins, material, syllabi, and other related information to aid in assessing the RTNAI's eligibility for Pell Grant Funding. Beth Jacob never responded to the requests.

After the audit, DOE learned that AC-CET had rescinded its interim approval. On February 2, 1995, DOE denied the reimbursement requests. DOE told Beth Jacob that it would reconsider the funding requests if ACCET approved the RTNAI Program and Beth Jacob resubmitted the requested information. On May 2, 1995, Beth Jacob informed the DOE, in writing, that ACCET had "restored" the approved status of the RTNAI program and asked that DOE "expeditiously" approve its previous funding requests. Beth Jacob did not submit the information that DOE had previously requested.

On June 12, 1995, in response to Beth Jacob's letter, DOE informed Beth Jacob that it would not provide Pell Grant funding because there was no evidence that the RTNAI program provided vocational training that "prepares students for gainful employment in a recognized occupation" and because Beth Jacob failed to submit an updated Pell Grant funding request. Beth Jacob then filed this action.

On April 19, 1996, five months after this action was commenced, DOE issued a "final program review determination" ("FPRD") to recover the Pell funds disbursed during the 1990–1991 through 1994–1995 award years for the JCP program based upon the ALJ decision dated March 4, 1994. Beth Jacob was ordered to pay the DOE the sum of $19,927,668. Beth Jacob appealed the FPRD. The finding was upheld by ALJ Richard I. Slippen by order dated March 17, 1997. ALJ Slippen concluded, as the previous ALJ had, that the JCP did not prepare students for gainful employment and, therefore, was not entitled to Pell Grant funding.

Beth Jacob appealed to the Secretary of the DOE arguing the Pell Grant statutes require an eligible program to generally prepare students for gainful employment and not for employment in a specific occupation. In an order dated October 13, 1998, the Secretary rejected Beth Jacob's argument and found that the JCP was not an eligible vocational Pell Grant Program. However, in the exercise of his discretion, the Secretary reversed the finding of financial liability and imposed a fine in the amount of $50,000.

In separate letters to this Court, Beth Jacob and the DOE argue that the Secre-

tary's October 13, 1998 decision supports their position in this action. Beth Jacob argues that by reducing the monetary fine, the Secretary acknowledges that Beth Jacob did not engage in any fraudulent conduct. The DOE argues that the decision only reaffirms the finding that the JCP was not an eligible program.

## DISCUSSION

Beth Jacob moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing that the "uncontroverted facts" demonstrate that the RTNAI program was properly commenced and that the DOE had an obligation to reimburse Beth Jacob on behalf of the eligible students enrolled in the program. DOE moves for judgment on the pleadings pursuant to Rule 12(b)(1) and Rule 12(c) of the Federal Rules of Civil Procedure arguing that the factual record shows that the RTNAI program was not eligible for Pell Grant Funding and, therefore, DOE lawfully denied Beth Jacob's reimbursement requests. Since matters outside the pleadings were submitted and considered by this Court, defendant's motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(c).

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. Once the moving party meets this burden, the non-moving party must demonstrate that a genuine issue exists and that the moving party is not entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "do more than simply show there

is some metaphysical doubt as to material facts." *Id.* at 586, 106 S.Ct. 1348.

## A. Standard of Review Under the Administrative Procedure Act

The Administrative Procedure Act ("APA") provides for limited judicial review of final agency actions. 5 U.S.C. § 706 *et seq.* The APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute ... [to seek] ... judicial review." *Id.* at § 702. Under the APA, a court may set aside agency actions found to be "arbitrary or capricious, an abuse of the agency's discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1998). A court may also set aside actions that are: (1) "contrary to a constitutional right," (2) "in excess of statutory jurisdiction," (3) "without observance of procedure required by law," (4) unsupported by substantial evidence, or (5) "unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court." *Id.* at § 706(2)(B)–(F).

 Under most circumstances, a court will review an agency determination to decide whether it was "arbitrary, capricious, an abuse of discretion, or otherwise contrary with law." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). A court may not substitute its judgment for the judgment of the administrative agency. *CBS, Inc. v. Federal Communications Comm'n*, 453 U.S. 367, 387, 101 S.Ct. 2813, 69 L.Ed.2d 706 (1981). Generally, the scope of review of an agency action is limited to the administrative record. *Camp*, 411 U.S. at 142, 93 S.Ct. 1241. A *de novo* review is "appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp*, 411 U.S. at 141, 93 S.Ct. 1241 (citing *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Like-

wise, the "substantial evidence" standard is only "appropriate when reviewing findings made on a hearing record." *Id.*

■ The Court rejects Beth Jacob's argument that it should conduct a *de novo* review of the facts. There is simply no basis in law for this Court to undertake such a review. Plaintiff contends that DOE did not adequately investigate the facts before denying the reimbursement requests. Specifically, plaintiff claims that it was entitled to an administrative hearing. DOE did not terminate Beth Jacob's participation in the Pell Grant Program. DOE simply refused to pay Beth Jacob's reimbursement requests based upon, *inter alia*, its conclusion that the RTNAI program did not meet the statutory definition of "vocational." The statutory scheme requires that hearing if DOE seeks to terminate an institution's participation in the Pell Grant program. The fact that there was no adjudicatory proceeding or hearing is a factor in deciding whether DOE's determination was arbitrary, capricious, or otherwise unlawful, but it does not in itself justify a *de novo* review.

■ An agency action may be held arbitrary or capricious only if the agency: (1) relies on factors which Congress did not intend it to consider; (2) entirely fails to consider an important aspect of plaintiff's claim; (3) offers no explanations for it decision counter to the evidence; or (4) makes a final decision that "is so implausible that it could not be ascribed to agency expertise." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). For the reasons explained below, the Court concludes that DOE's denial of the reimbursement requests submitted by Beth Jacob was not arbitrary, capricious, or otherwise contrary to law. DOE's denial of Beth Jacob's reimbursement requests was based on its decision, following an audit of the RTNAI program, that the RTNAI was not an eligible program.

**B. The Pell Grant Program**

The Pell Grant Program, 20 U.S.C. § 1070(a), is the largest federal student financial assistance program. Pell Grants are offered to help financially-needy students obtain undergraduate degrees and vocational training. As a grant based program, Pell grants do not require repayment by student grant recipients to the Government. Educational institutions must meet numerous criteria in order for their students to be eligible to participant in the Pell Grant Program. Among other requirements, the institution must be certified by the Secretary of Education (the "Secretary") as eligible to participate in the Pell Grant Program. 34 C.F.R. §§ 668.12–668.13 (1994). The institution must also be accredited by a nationally-recognized accrediting agency approved by DOE. 20 U.S.C. § 1088(c); 20 U.S.C. § 1141(a). A "nationally recognized accrediting agency" is an agency that the DOE recognizes as a reliable authority to determine whether the education and training offered by an institution qualifies under the Pell Grant Program. DOE publishes a list of these agencies in the Federal Register. ACCET is one such agency.

In addition, not only must the institution be eligible but the specific programs that it offers must also be eligible. Specifically, to be eligible for Pell Grant funding the program must be vocational. To qualify as a "vocational educational program," the program must provide training that "prepares a student for gainful employment in a recognized occupation." 34 C.F.R. § 668.8(d)(1)(iii) (1994). Qualified institutions that introduce new educational programs after certification must have the programs declared eligible by the Secretary. 34 C.F.R. § 600.10(c)(1) (1994).

The Regulations allow previously qualified institutions to forego the application process typically required to have a new program declared eligible. *Id.* at § 600.10(c)(2). However, the that institution will be responsible for repaying any Pell Grant funding it receives, if at any

time it is determined that the new program is not eligible. *Id.* at § 600.10(c)(3). It is this procedure that Beth Jacob elected to follow when it instituted the RTNAI Program. Rabbi Teichman alleges that he called Dr. Jamroz, the then Acting Director of the Institutional Participation Division of the Office of Student Financial Assistance Programs, and that Dr. Jamroz advised him "that based upon ... Teichman's description of the program Beth Jacob did *not* need any departmental approval and could begin the program." Teichman Aff. ¶ 46. DOE denies that Dr. Jamroz's statement constitutes "approval" of the RTNAI Program. Rather, DOE that Dr. Jamroz merely restated the guidelines set forth in the regulations. According to Dr. Jamroz determinations of eligibility are not done over the telephone. Jamroz Decl. At ¶¶ 3–4.[1]

Institutions may award Pell Grants only to students who satisfy all eligibility requirements, and have previously applied to DOE for a determination for their financial qualification. 34 C.F.R. § 690.12 (1994); 34 C.F.R. §§ 690.61–.62 (1994); .34 C.F.R. § 690.75(a) (1994). Institutions must document and maintain records that establish the eligibility of students for any funds awarded. 34 C.F.R. § 668.24(a)–(c); 34 C.F.R. §§ 690.81–.82 (1994).

## C. The Requests for Reimbursement

In late 1994, Beth Jacob submitted three requests totaling $498,735 to DOE on behalf of its students enrolled on the RTNAI program. In February 1995, DOE denied Beth Jacob's request on the basis that the ACCET had rescinded its approval. Beth Jacob informed DOE on May 2, 1995 that ACCET restored its approval of the RTNAI program. In June 1995, after completing the audit of the RTNAI program, DOE denied Beth Jacob's Pell Grant reimbursement requests for two reasons. First, DOE concluded that the RTNAI Program did not provide vocational training that prepared students for "gainful employment in a recognized occupation," as required by 34 C.F.R. § 668.8(d). Second, Beth Jacob failed to update Pell Grant funding requests as required by the DOE.

Beth Jacob contends that DOE should have held a hearing before deciding not to pay the reimbursement requests. Beth Jacob recognizes that if an institution incorrectly determines that a new program is eligible for Pell Grant funding, the institution is liable to repay any monies received. However, Beth Jacob alleges that DOE cannot unilaterally make that determination and that the DOE should have either brought an emergency action or a termination action before refusing reimbursement of the claims. Beth Jacob alleges that the failure of the DOE to bring such an administrative action deprived it of its right to due process. DOE argues that Beth Jacob had no due process right to a hearing because it did not terminate Beth Jacob's participation in the Pell Grant Program. Rather, DOE simply denied inadequate reimbursement claims.

Pursuant to 34 C.F.R. § 668.86, DOE may terminate an institution's participation in the Pell Grant program for, *inter alia,* a violation of statutory provisions or if the institution "substantially misrepresents ... its educational program, its financial charges or employability of its graduates." Limitation or termination proceedings are commenced by notifying the institution. 34 C.F.R. § 668.86(b)(1). The institution may request a hearing. *Id.* A termination ends an institution's participation in the Pell Grant program. 34 C.F.R. § 668.94(a).

---

1. DOE argues, in the alternative, that even if Dr. Jamroz "approved" the RTNAI program, that approval is not binding since such approval is contrary to the regulations. The Supreme Court has held that reliance on erroneous information given by a government employee about the amount of benefits available does not estop the government from denying benefits not otherwise permitted by law. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 2475–76, 110 L.Ed.2d 387 (1990).

Indeed, DOE instituted termination proceedings against Beth Jacob in 1993. However, at that time, the ALJ determined that although the JCP was not an eligible program, Beth Jacob was an eligible institution. Based on that decision, DOE instituted an action against Beth Jacob for the return of funds previously disbursed on behalf of students enrolled in the JCP. That amount was in excess of $19,000,000. Ultimately, the Secretary determined that although the JCP was not an eligible program, Beth Jacob did not have to repay those funds already reimbursed. Rather, in his discretion, the Secretary imposed a $50,000 fine.

■ In 1995, however, DOE did not seek to terminate Beth Jacob's participation in the Pell Grant program. It simply denied requests for reimbursement on the basis that the RTNAI program, not Beth Jacob as an institution, was ineligible for Pell Grant funding. Therefore, Beth Jacob was not entitled to a hearing.

*CONCLUSION*

■ Based upon the record before the Court, DOE's denial of Beth Jacob's reimbursement requests cannot be found to be arbitrary, capricious, or otherwise contrary to law. As demonstrated by the factual background to this action, plaintiff and defendant have a long history. Interestingly, that history has little to do with the current controversy. The only issue presented in this action is whether the DOE's denial of Beth Jacob's reimbursement requests for the first semester of the RTNAI program was arbitrary, capricious, or otherwise contrary to law. The fact that Beth Jacob, as an institution, is eligible to participate in the Pell Grant Program is undisputed. DOE did not attempt to revoke Beth Jacob's participation in the Pell Grant Program. DOE denied Beth Jacob's reimbursement requests because it concluded that the RTNAI program did not meet the statutory definition of vocational and because of Beth Jacob's failure to submit the requested materials.

DOE conducted an audit of the Program including interviews with students. DOE requested that Beth Jacob submit copies of course descriptions, bulletins, and syllabi in support of reimbursement requests. Beth Jacob failed to do so. Beth Jacob was qualified to forego the normal "approval process" for new programs. However, it is clear from the statute that in the event a qualified institution incorrectly determines that a program is eligible, the institution is liable for any monies reimbursed. It is logical that if an institution is liable for monies reimbursed, it also assumes the risk that monies will not be reimbursed if the Secretary determines that the program is not eligible.

There is simply no evidence that Dr. Jamroz "approved" the RTNAI. According to Rabbi Teichman, he contacted Dr. Jamroz and explained that unlike the JCP, the RTNAI program was designed to lead to a specific job. Teichman Aff. ¶¶ 43–45. Beth Jacob alleges that Dr. Jamroz told Rabbi Teichman that based his description of the program, Beth Jacob "did not need approval and could begin the program." *Id.* at ¶ 46. Rabbi Teichman followed up the telephone conversation with a letter to Dr. Jamroz. The letter thanked Dr. Jamroz for "guidance" and stated that Beth Jacob would immediately being recruiting and enrolling students. *Id.* at Ex. G. However, the regulations clearly provide that eligible institutions may commence new programs without "approval" from the Secretary of the DOE. Even if Dr. Jamroz told Rabbi Teichman that Beth Jacob could start the RTNAI program without further approval, he was merely restating the regulations not approving the program. Construing this exchange in as favorable light as possible for the plaintiff, it is simply impossible to draw the suggested inference that the brief telephone conversation would prevent DOE from auditing the program to insure that public monies were in fact being expended in accordance with the Pell Grant program requirements.

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

The Clerk of the Court is directed to close this case.

SO ORDERED.